IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHETTY HOLDINGS, INC., et al. | : | |
| | : | CIVIL ACTION |
| v. | : | No. 11-4640 |
| | : | |
| NORTHMARQ CAPITAL, LLC, et al. | : | |
| | : | |

O'NEILL, J.                                                                                                                                   April 22, 2013

## **MEMORANDUM**

Now before me is defendants NorthMarq Capital, LLC and Timothy C. Kuhn's[1] motion to dismiss the third amended complaint of plaintiffs Chetty Holdings, Inc. and Carl E. Chetty, trading as Millview Apartment Homes, LP. For the reasons that follow, I will grant defendants' motion.

## **BACKGROUND**

This case arises out of plaintiffs' failed effort to obtain a mortgage loan insured by the United States Department of Housing and Urban Development for the refinance of an apartment complex known as the Millview Property. The facts of this case are familiar to all relevant parties and are detailed in my Opinion of May 1, 2012. Dkt. No. 50. I therefore only discuss the facts and procedural history that are relevant to the instant motion.

I previously granted defendants' motions to dismiss plaintiffs' second amended complaint, dismissing certain claims with prejudice and granting plaintiffs leave to amend certain claims. See Dkt. Nos. 50, 51. Relevant here, I dismissed plaintiffs' claims against NorthMarq and Kuhn for negligence and negligent misrepresentation, finding that plaintiffs' second amended complaint

---

[1] Plaintiffs' Third Amended Complaint also asserts claims against NorthMarq Capital, Inc. even though I previously dismissed all claims against NorthMarq Capital, Inc. with prejudice. See Dkt. Nos. 50, 51. I also previously dismissed plaintiffs' claims against AmeriSphere Multifamily Finance, LLC, AmeriSphere Financial, LLC and AmeriSphere Mortgage Finance, LLC. Id.

did not sufficiently allege a basis for the alleged duty of "NorthMarq, via its employee Kuhn . . . to exercise such care, skill, prudence and diligence as other members of the profession in advising Plaintiffs with regard to their financial condition, creditworthiness, financing options, and the 223(f) HUD loan application . . . ." Dkt. No. 50 at ECF p. 16-17, citing Second Am. Compl. ¶ 80.

On May 25, 2012, plaintiffs filed a third amended complaint asserting claims for negligence and negligent misrepresentation against NorthMarq and Kuhn. Dkt. No. 52. Plaintiffs' third amended complaint alleges that "NorthMarq was engaged in the business of providing commercial real estate financing and brokerage services, including loan origination and servicing, to real estate investors, developers, and capital sources," id. at ¶ 8, and that "NorthMarq possessed the requisite licenses to provide such commercial real estate financing and brokerage services in Pennsylvania." Id. at ¶ 9. Plaintiffs' third amended complaint also alleges that "Kuhn was an officer, employee and/or agent of Defendant NorthMarq and provided real estate services to Plaintiffs with respect to the Millview Property." Id. at ¶ 11. Plaintiffs now allege that "[d]uring his employment with NorthMarq, Kuhn was, upon information and belief, licensed as an Associate Broker pursuant to the laws of New York and licensed as a Broker Salesperson pursuant to the laws of New Jersey." Id. at ¶ 12. Plaintiffs' third amended complaint further contends that "Kuhn was not licensed to provide real estate services or real estate financing services under Pennsylvania law." Id. at ¶ 13. Plaintiffs assert that "Kuhn represented that he and NorthMarq were experienced real estate professionals, possessing the requisite skills to advise Plaintiffs with respect to their options as to the Millview Property." Id. at ¶ 25.

Kuhn allegedly "conducted a comprehensive review of the assets of Chetty Holdings, including the financial status of Millview, and made recommendations solely relating to refinance of the property, including an application for a 223(f) FHA/HUD refinancing loan." Id. at ¶ 26.

According to the allegations in the third amended complaint, "Kuhn, by virtue of his initiation of the relationship with Plaintiffs and his advice to pursue a 223(f) HUD loan, was the point person for Plaintiffs throughout the [223(f) loan application] process." Id. at ¶ 37. Plaintiffs now allege that, "based upon the financial condition of Plaintiffs, Kuhn and NorthMarq should have advised Plaintiffs to list the Millview Property [for sale] even while simultaneously pursuing an application for a 223(f) HUD loan, to prevent Plaintiffs from incurring any pre-payment penalties." Id. at ¶ 31. The third amended complaint asserts that "

> [r]ecommending that Plaintiffs simultaneously pursue a sale of the Millview Property would have been proper advice under the circumstances, because sales of commercial real estate usually take many months to complete, and if the refinancing effort were to fail, which was or should have been obvious to Defendants from the inception of the relationship, plaintiffs should have been provided with a realistic, alternate, and concurrent strategy by Kuhn and NorthMarq to avoid prepayment penalties.

Id. at ¶ 32. Plaintiffs contend that "Kuhn did not recommend a sale of the Millview Property because Kuhn was not a Pennsylvania-licensed broker and, therefore, would be unable to collect a commission and/or fees on any sale of the Property." Id. at ¶ 34.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiffs' obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of

the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). The complaint must state "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 321 (3d Cir. 2008), quoting Twombly, 550 U.S. at 556. The Court of Appeals has made clear that after Ashcroft v. Iqbal, 556 U.S. 662 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 556 U.S. at 678. The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

Id. at 210-11, quoting Iqbal, 556 U.S. at 679. The Court explained that "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679.

# DISCUSSION

## I.     Duty of Care

To prevail on a claim for negligence under Pennsylvania law, plaintiffs must first establish that defendants owed them a duty of care. See Merlini ex rel. Merlini v. Gallitzin Water Auth., 980 A.2d 502, 506 (Pa. 2009). Plaintiffs' claim for negligent misrepresentation is likewise premised on the existence of a duty owed to plaintiffs by defendants. See Bortz v. Noon, 729 A.2d 555, 561 (Pa. 1999).

> The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution.

Althaus ex rel. Althaus v. Cohen, 756 A.2d 1166, 1169 (Pa. 2000) (citations omitted).

Plaintiffs now allege that "[b]y soliciting Plaintiffs' business and providing advice to Plaintiffs regarding the Millview Property, Plaintiffs' financial condition, Plaintiffs' creditworthiness, Plaintiffs' financing options, and the 223(f) HUD loan application, NorthMarq, via . . . Kuhn, assumed and/or created a duty to render such advice accurately and with reasonable care, skill, prudence, and diligence." Dkt. No. 52 at ¶ 103. They further contend that NorthMarq and Kuhn owed them a duty of care pursuant to: (1) 49 Pa. Code §§ 35.282 and 35.292, regulations implemented under Pennsylvania's Real Estate Licensing and Registration Act (RELRA), see Dkt. No. 52 at ¶¶ 92, 93, 104, 105; (2) the New York Real Estate Brokers and Real Estate Salesmen Act, NY Real Prop. Law § 440 et seq., see Dkt. No. 52 at ¶¶ 94, 106; (3) the New Jersey Real Estate License Act, N.J. Stat. § 45:15-1 et seq., see Dkt. No. 52 at ¶¶ 95, 107; and (4) defendants' alleged membership in the National Association of Realtors and that organization's Code of Ethics and

Standards of Practice.  Id. at ¶ 108.  I find that plaintiffs' amended allegations are sufficient to establish the requisite duty of care.

### A. Statutory and Regulatory Provisions

I find that RELRA, the New York Real Estate Brokers and Real Estate Salesmen Act[2] and the New Jersey Real Estate Licensing Act cannot provide plaintiffs with a basis for their claims of negligence and/or negligent misrepresentation against Kuhn and NorthMarq.  I note first that plaintiffs do not identify any case in which a court has found that any of the listed provisions are sufficient to create a duty of care from a mortgage broker to a client seeking to refinance a real estate loan.

RELRA defines a "broker" as, inter alia, "[a]n individual or entity holding either a standard or reciprocal license, that, for another and for a fee, commission or other valuable consideration, . . . (ii) Negotiates the . . . financing . . . for real estate."  49 Pa. Code § 35.201  Similarly, RELRA defines a "salesperson" as "[a]n individual holding either a standard or reciprocal license, who is employed by a broker to . . . (iv) Negotiate a loan on real estate."  Id.  The New York Act defines a "real estate broker" to include

> any person firm, limited liability company or corporation, who, for another and for a fee, commission or other valuable consideration . . . negotiates or offers or attempts to negotiate, a loan secured or to be secured by a mortgage, other than a residential mortgage loan . . . or other incumbrance [sic] upon or transfer of real estate.

N.Y. Real. Prop. Law § 440.  The New Jersey Act defines a real estate broker in relevant part as "a

---

[2] The New York Real Estate Brokers and Real Estate Salesmen Act limits its scope to transactions "in this state," i.e., New York, and thus does not govern advice given or services performed in Pennsylvania.  N.Y. Real Prop. Law. § 440-a.  Even if the requirements of the New York Act could reach past the borders of that state, I find that it would not impose a duty on Kuhn or NorthMarq for the services they rendered to plaintiffs.

person, firm or corporation who . . . offers or attempts or agrees to negotiate a loan secured or to be secured by a mortgage or other encumbrance upon or transfer of any real estate for others . . . ." N.J.S.A. 45:15-3. While Kuhn and NorthMarq's services in this case arguably fall within the scope of the cited statutory provisions, as defendants observe, none of the statutes provide for a private right of action. See Marra v. Burgdorf Realtors, Inc., 726 F. Supp 1000, 1008 (E.D. Pa. 1989) (holding that RELRA "merely grants the State Real Estate Commission the authority to investigate complaints, hold hearings, and impose penalties. It does not set out the basis for private relief; instead, it provides for citizen complaints to the State Real Estate Comission."); Iwashyna v. Dep't of Hous. & Urban Dev., No. 93-1138, 1993 WL 313702, at *3 n.5 (E.D. Pa. Aug. 16, 1993) ("Plaintiffs' reliance upon 63 Pa. Stat. Ann. § 455.604 as a basis for their action against [defendant] is misplaced. That provision of [RELRA] allows the Pennsylvania State Real Estate Commission to impose fines, and suspend or terminate real estate licenses, but does not provide an explicit or implied private cause of action."); NY Real Prop. Law § 440 et seq.[3]; Chung v. Jang, No. DC-27765-09, 2001 WL 2375056, at *4 (N.J. Super. Ct. App. Div., June 3, 2011) (finding that "nothing in [the New Jersey Act's] language or history . . . would support a finding that the [New Jersey] Legislature 'intended to create a private right of action'"). Courts in Pennsylvania have recognized that the "absence of a private cause of action in a statutory scheme is an indicator that the statute did not contemplate enforcement for individual harms." Wagner v. Anzon, Inc., 684 A.2d 570, 574 (Pa. Super. Ct. 1996) (citations omitted).

"[U]nder Pennsylvania negligence law whether a statute may serve as the basis of liability is analyzed pursuant to the principles of negligence per se." Hawley v. Del. & Hudson Ry. Co.,

---

[3] As defendants argue, "[t]here is no private cause of action suggested anywhere in the [New York] Act." Dkt. No. 54 at ECF p. 20.

514 F. Supp. 2d 650, 659 (M.D. Pa. 2007), citing Congini by Congini v. Portersville Valve Co., 470 A.2d 515, 517-18 (Pa. 1983). The appropriate analysis for a court to apply in determining whether a particular legislative enactment will provide a duty under Pennsylvania law is pursuant to the Restatement (Second) of Torts § 286. See Congini, 470 A.2d at 517-18. Neither plaintiffs nor defendants provide an analysis of whether the Pennsylvania, New York or New Jersey legislation create a duty pursuant to section 286 of the Restatement (Second) of Torts, which provides that

> [t]he court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part
>
> (a) to protect a class of persons which includes the one whose interest is invaded, and
>
> (b) to protect the particular interest which is invaded, and
>
> (c) to protect that interest against the kind of harm which has resulted, and
>
> (d) to protect that interest against the particular hazard from which the harm results.

Restatement (Second) of Torts § 286. When, however, a statute is only intended to secure for "individuals the enjoyment of rights and privileges to which they are entitled as members of the public, rather than for the purpose of protecting any individuals from harm" a negligence per se claim usually does not apply. Restatement (Second) of Torts § 288(b) cmt. c (1965). None of the cited legislation is aimed at protecting the interests of any particular class of individuals. Rather, they were designed to protect the public as a whole. See Winthrop & Co., Inc. v. Milgrom, 668 A.2d 557, 560 (Pa. Super. Ct. 1995) ("the rationale underlying statutes such as the

RELRA was the protection of the public and the prevention of fraud")[4], citing Verona v. Schenley Farms Co., 167 A. 317, 320 (Pa. 1933); Dodge v. Richmond, 173 N.Y.S.2d 786, 787-88 (N.Y. App. Div. 1958) (holding the New York Act was "designed to protect the public from inept, inexperienced or dishonest persons who might perpetrate or aid in the perpetration of frauds upon it, and to establish protective or qualifying standards to that end"); Re/Max of N.J., Inc. v. Wausau Ins. Cos., 744 A.2d 154, 158 (N.J. 2000) ("The [N.J.] Brokers Act is designed to protect the public.") (citation omitted). Because individuals such as plaintiffs are only indirect beneficiaries of the obligations set forth in the New York and New Jersey Acts, I find that the requirements for imposing a duty on defendants pursuant to the cited statutes via section 286 of the Restatement are not satisfied. Cf. Fallowfield Dev. Corp. v. Strunk, Nos. 89-8644, 90-4431, 1991 WL 17793, at *8-10 (E.D. Pa. Feb. 11, 1991) (declining to allow a claim of negligence per se based on the Pennsylvania Solid Waste Management Act where the statute was "intended to protect the health, safety, and welfare of the community and not individuals seeking to recover pecuniary losses."). Accordingly, I decline to find that the NorthMarq and Kuhn's obligations as brokers licensed under the New York and New Jersey Acts are sufficient to establish that they owed a duty to plaintiffs for the purpose of plaintiffs' negligence and negligent misrepresentation claims.

**B.      National Association of Realtors Membership**

I also find that defendants' alleged membership in the National Association of Realtors is not sufficient to establish that they owed plaintiffs a duty of care under that organization's Code of

---

[4] In Winthrop, 668 A.2d at 560, the Court further explained that RELRA "was enacted for the benefit of the average consumer who entered into an isolated transaction involving residential real estate or the transfer of a small business and was not designed to apply to the interactions of business persons who regularly deal with complicated stock and asset transfers." From that perspective, plaintiffs, who sought commercial real estate financing for a "350-unit apartment complex," Dkt. No. 52 at ¶ 4, arguably are not among those whose interests RELRA was enacted to protect.

Ethics and Standards of Practice. In their motion to dismiss, defendants assert that neither NorthMarq nor Kuhn were members of the National Association of Realtors. Dkt. No. 54 at ECF p. 18 n.11. Even if they were, plaintiffs cite no authority to support the proposition that Kuhn or NorthMarq's voluntary membership in that organization would give rise to a legally cognizable duty of care governing their conduct in "providing advice to Plaintiffs regarding the Millview Property, Plaintiffs' financial condition, Plaintiffs' creditworthiness, Plaintiffs' financing options, and the 223(f) HUD loan application . . . ." Dkt. No. 52 at ¶ 103.

### C. No Fiduciary Obligation

Further, plaintiffs have not alleged any facts to suggest that either NorthMarq or Kuhn owed them a duty by virtue of some fiduciary relationship with plaintiffs. Plaintiff alleges that NorthMarq "was engaged in the business of providing commercial real estate financing and brokerage services, including loan origination and servicing, to real estate investors, developers, and capital sources."[5] Dkt. No. 52 at ¶ 8. Plaintiffs assert that Kuhn "conducted a comprehensive review of the assets of Chetty Holdings . . . and made recommendations solely relating to refinance of the property . . . ." Dkt. No. 52 at ¶ 26. They allege that Kuhn represented that "he and NorthMarq . . . . possess[ed] the requisite skills to advise Plaintiffs with respect to their options as to the Millview Property," Id. at ¶ 25. Absent from plaintiffs third amended complaint are any allegations that Kuhn or NorthMarq agreed to act in any interest other than their own when they provided to plaintiffs advice and recommendations about refinancing the Millview Property. Plaintiffs do not allege that Kuhn or NorthMarq exercised substantial control

---

[5] To the extent that NorthMarq acted as a lender to plaintiffs, there is generally a presumption that a lender-borrower arrangement is an arms-length relationship. See Temp-Way Corp. v. Cont'l Bank, 139 B.R. 299, 318 (E.D. Pa. 1992) (noting the "presumption that the relationship between lenders and borrowers is conducted at arms-length and the parties are each acting in their own interest") aff'd, 981 F.2d 1248 (3d Cir. 1992).

over plaintiffs' business affairs. Nor do plaintiffs claim that Kuhn or NorthMarq owed them a duty because they were unsophisticated borrowers. See, e.g., Temp-Way, 139 B.R. at 318 (citations omitted) ("In order to establish the existence of a fiduciary relationship, [plaintiffs] must each demonstrate that there was an overmastering influence on one side, and weakness, dependence or trust on the other side at a relevant time."); cf. Com. ex rel. Corbett v. Snyder, 977 A.2d 28, 47-48 (Pa. Commw. Ct. 2009) (recognizing "the trial court had reasonable grounds for determining that [mortgage brokers] owed a fiduciary duty to Consumers" where the consumers "trusted and relied on" mortgage brokers and it appeared that the brokers had "vastly superior access to knowledge about" the loan product offered than did the consumers); In re Barker, 251 B.R. 250, 268 (E.D. Pa. Bankr. 2000) (holding mortgage broker owed a fiduciary duty to an unsophisticated customer). I find that plaintiffs' allegations are insufficient to raise a reasonable expectation that discovery will reveal evidence that Kuhn and NorthMarq owed a fiduciary duty to plaintiffs.

### D. Section 299A Restatement (Second) of Torts

I find convincing, however, plaintiffs' argument that Kuhn and/or NorthMarq were subject to a duty as licensed professionals pursuant to Section 299A of the Restatement (Second) of Torts. Section 299A states that

> [u]nless he represents that he has greater or less skill or knowledge, one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities.

Restatement (Second) of Torts § 299A. While, as plaintiffs contend, "Pennsylvania courts have explicitly relied upon (and arguably adopted) Section 299A as a basis to impart a variety of professionals with a duty to render services in accordance with the standards of their profession,"

Dkt. No. 58 at ECF p. 19, none of the cases cited by plaintiff relate to professionals who were licensed as real estate or mortgage brokers.

However, Swantek v. Prudential Property & Casualty Insurance Co., 48 Pa. D. & C. 3d 42 (Pa. Ct. Com. Pl., Erie Cnty. 1988), a case cited by plaintiffs and which held that Section 299A imposed a duty of care on insurance agents, supports the imposition of a duty on defendants. In Swantek, the Court noted that "in order to sell insurance in [Pennsylvania], [an insurance] agent must obtain a license, and if he or she does not, then the agent who continues to sell insurance without a license is subject to certain sanctions including a monetary penalty." Id. at 46. In reaching its holding that Section 299A imposed a duty on insurance agents, the Court remarked that "[i]t is obvious from the statutes that the commonwealth deems an insurance agent to be a professional skilled in the business of insurance matters." Id. at 47. Plaintiffs have alleged that Kuhn and/or Northmarq were subject to similar licensing requirements in Pennsylvania for their conduct as mortgage brokers. Defendants have not argued that they were exempt from the cited licensing requirements.[6] Accordingly, I find that plaintiffs have sufficiently alleged that

---

[6] I note that RELRA applies to brokers and salespeople with "reciprocal licenses." See 49 Pa. Code § 35.201. A "reciprocal license" is

> [a] license issued to an individual or entity whose principal place of business for the provision of real estate services is outside of this Commonwealth and who holds a current license to provide real estate services from a state that either has executed a reciprocal agreement with the Commission or has qualifications for licensure which are substantially comparable to those required by the Commission.

Id. Defendants have not argued that they are not subject to RELRA by way of a reciprocal license. Although Kuhn was not licensed in Pennsylvania, plaintiffs allege that he was "licensed as an Associate Broker pursuant to the laws of New York . . . ." Dkt. No. 52 ¶ 12. The Pennsylvania State Real Estate Commission appears to have a reciprocal agreement with New York. See Real Estate Commission FAQ, Reciprocal Licensure (Mar. 9, 2010),

defendants owed them a duty to "to exercise the skill and knowledge normally possessed by members of [their] profession or trade in good standing in similar communities." Restatement (Second) of Torts § 299A

## II. Proximate Cause

I find, however, that plaintiffs' third amended complaint cannot withstand defendants' motion to dismiss because it does not sufficiently allege that defendants' alleged negligent conduct was the proximate cause of the harm allegedly suffered by plaintiffs. Under Pennsylvania law, proximate cause is an essential element of plaintiffs' negligence and negligent misrepresentation claims. See Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 771 (3d Cir. 2009) (negligent misrepresentation); Holt v. Navarro, 932 A.2d 915, 921 (Pa. 2007) (negligence).

> It is beyond question that the mere existence of negligence and the occurrence of injury are insufficient to impose liability upon anyone as there remains to be proved the link of causation. . . . [the] Supreme Court [of Pennsylvania] has stated that even when it is established that the defendant breached some duty of care to owed the plaintiff, it is incumbent on a plaintiff to establish a causal connection between defendant's conduct, and it must be shown to have been the proximate cause of plaintiff's injury.

Lux v. Gerald E. Ort Trucking, Inc., 887 A.2d 1281, 1286 (Pa. Super. Ct. 2005) (citations, quotations and alterations omitted), appeal den., 901 A.2d 499 (Pa. 2006).

Pennsylvania has adopted the "substantial factor" test under which "a defendant's negligent conduct is not the proximate cause of the plaintiff's injury unless the alleged wrongful acts were a substantial factor in bringing about the plaintiff's harm." Gallulo v. Fed. Ex. Corp., 937 F. Supp. 392, 395 (E.D. Pa. 1996) (citation and internal quotation omitted).

> The following considerations are in themselves or in

---

http://www.portal.state.pa.us/portal/server.pt/gateway/PTARGS_0_160484_771778_0_0_18/RECIPROCAL2.pdf (last visited April 9, 2013).

> combination with one another important in determining whether the actor's conduct is a substantial factor in bringing about harm to another:
>
> (a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;
>
> (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible; [and]
>
> (c) lapse of time.

Lux, 887 A.2d at 1287, citing Restatement (Second) of Torts § 433 (1965). To determine whether any breach of duty proximately caused plaintiffs' damages, the Court looks to whether a reasonable person would infer that the injury was the natural and probable result of defendants' breach of duty. Commerce Bank/Pa. v. First Union Nat'l Bank, 911 A.2d 133, 142 (Pa. Super. Ct. 2006).

In support of their negligence claim, plaintiffs allege that defendants breached their duty by, inter alia, "failing to act with due diligence in assessing Plaintiffs' ability to refinance the mortgage on the Millview Property," Dkt. No. 52 at ¶ 97(c), "failing to properly evaluate the capitalization of the Millview Property when assessing Plaintiffs' ability to obtain a 223(f) HUD loan," id. at ¶ 97(d), "failing to . . . ensure that the loan would close, and that it would close on or before July 31, 2010," id. at ¶ 97(r); "failing to adhere to the industry standards in the broker community," id. at ¶ 97(v), and "failing to ensure that the services Kuhn performed on behalf of NorthMarq would not result in financial detriment to Plaintiffs." Id. at ¶ 97(w). Plaintiffs contend that "as a direct and proximate result of NorthMarq and Kuhn's aforementioned negligence, plaintiffs were caused to suffer significant financial losses . . . ." Id. ¶ 99.

Defendants argue that their actions were not a substantial factor in the harm allegedly suffered by plaintiffs – the prepayment penalties plaintiffs incurred upon deciding to sell the Millview Property. Dkt. No. 54 at ECF p. 21. Defendants contend that plaintiffs accepted a mortgage with prepayment penalties without defendants' assistance and further, that plaintiffs triggered those penalties when they decided to sell the Millview Property "without any input from Defendants." Id. Thus, defendants contend, plaintiffs' own actions caused them harm. Id.

Plaintiffs counter that

> [h]ad it not been for Defendants initiating a relationship with Plaintiffs, holding themselves out as possessing the requisite professional skills to evaluate the Millview Property, rendering professional services and advice that was contrary to a level of care expected of real estate professionals, and consistently recommending a refinance that was implausible and/or not in the best interest of Plaintiffs . . . Plaintiffs never would have pursued the doomed HUD 223(f) refinance that resulted in significant prepayment penalties, loan application and processing fees and other alleged losses.

Dkt. No. 58 at ECF p. 29.

I find that plaintiffs' allegations establish only that defendants "created a situation harmless unless acted upon by other forces for which [they were] not responsible." Lux, 887 A.2d at 1287, quoting Restatement (Second) of Torts § 433 (1965). Defendants' actions were only one factor in the chain of events leading to the "$2,600,000 in pre-payment penalties to Northwestern Mutual" and plaintiffs' other claimed damages. Dkt. No. 52 at ¶ 86. Other significant factors included: (1) the drop in occupancy at the Millview Property, id. at ¶¶ 21, 77(ii); (2) plaintiffs' resultant inability to make timely payments on the Northwestern Mutual loan, id. at ¶¶ 43(a), (b), (c), 77(i); (3) Northwestern Mutual's determination that it would not modify the terms of plaintiffs' mortgage and waive pre-payment penalties after July 31, 2010, id. at ¶¶ 52, 74;

(4) HUD's determination that plaintiffs did not qualify for a 223(f) loan, id. ¶ 76; and (5) plaintiffs' decision to "pursue a sale of the Millview Property well after the date on which the pre-payment penalty began to accrue," id. at ¶ 85.

While defendants provided plaintiffs with an assessment of their ability to refinance their Mortgage and advised plaintiffs of their ability to obtain a 223(f) HUD loan, neither Kuhn nor NorthMarq could guarantee the outcome of plaintiffs' HUD application. Likewise, they could not guarantee that plaintiffs could close on a loan by a date certain and they could not promise that Northwestern Mutual would indefinitely waive the prepayment penalty. NorthMarq and Kuhn could only offer their opinions as to whether or not plaintiffs' HUD application would be approved and whether Northwestern Mutual would enforce its pre-payment penalty. Their alleged negligent acts rest on actions and decisions that were ultimately to be taken or made by HUD and Northwestern Mutual. See, e.g. id. at ¶ 64 ("Kuhn continuously represented to plaintiffs that HUD *would* issue a Firm Commitment . . . or Northwestern Mutual *would* otherwise show leniency with respect to the prepayment penalty") (emphasis added). I find that these acts are not sufficient to show that defendants' alleged wrongs are the proximate cause of plaintiffs' claimed injuries. Accordingly, I will grant defendants' motion to dismiss.

An appropriate Order follows.